# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Antonio Nikki Roundtree,                    Case No. 3:18CV1198

    Plaintiff

    v.                                      **ORDER**

Tyler Dunlap, et al.,

    Defendants

Plaintiff Antonio Nikki Roundtree brings this action pursuant to 42 U.S.C. § 1983 against defendants Tyler Dunlap, Gary C. Mohr, Warden James S. Haviland, Lieutenant Briely, and Brian Wittrup.[1] Roundtree is currently incarcerated at the Southern Ohio Correctional Facility in Lucasville, Ohio, but the instant action pertains to events at the Allen Correctional Institution in Lima, Ohio, where he was incarcerated at the time  Jurisdiction is proper under 28 U.S.C. § 1331.[2]

For the following reasons, I dismiss this case.

---

[1] Plaintiff states that at the time of the events at issue here, defendant Tyler Dunlap is a correctional officer at Allen Correctional Institution, Gary Mohr is the director of the Ohio Department of Rehabilitation and Corrections, James Haviland is the warden at Allen Correctional Institution, Lieutenant Briely is the Rules Infraction Board lieutenant at Allen Correctional Institution, and Brian Wittrup is the chief of classifications at the Ohio Department of Rehabilitation and Corrections. (Doc. 1 at 6-7).

[2] Plaintiff also invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367. (*See* Doc. 1 at 6).

## Background

The events giving rise to this case began on November 8, 2016.

### A. The contraband

Roundtree alleges that on November 8, 2016, he was sitting on the bed in his cell texting on a cell phone when defendant correctional officer Tyler Dunlap walked up to the door of his cell and asked Plaintiff what he had in his hand. Plaintiff stood up, tried to conceal the cell phone, and told Dunlap that he had nothing in his hand. Dunlap asked Roundtree if the object was a phone, and Roundtree unsuccessfully attempted to flush the cell phone down the toilet. According the complaint, Dunlap called for back-up and sprayed Rountree with mace. Plaintiff claims that instead of placing him in handcuffs, Dunlap placed him in a choke hold and both fell to the floor. Roundtree states that he raised his hands prior to being taken to the floor to avoid an altercation, but which resulted in a false accusation of assault. After they fell to the floor, Dunlap began applying "hammer fists" to Plaintiffs ribs. (Doc. 1 at 8-9, ¶¶ 1-14).

Plaintiff was taken to the "hole" and a nurse came to see him. Plaintiff told the nurse he was fine. Roundtree claims that the next day, his rib area was painful and swollen so he went to sick call and the nurse told him about the injuries that came from Dunlap's hammer fists. Roundtree alleges that he received a "second opinion from another nurse" that there is "no cure" for sore, cracked and broken ribs, and it took almost a year for the pain in his ribs to go away. (*Id.* at 9-10, ¶¶ 16-19). That said, Plaintiff does not allege that he was diagnosed with fractured or broken ribs, but that he was diagnosed by three different nurses with "bruised ribs, muscle spasms, sore neck, and bruised muscles." (*Id.* at 20-21, ¶ 14). Roundtree does not allege that he was examined by a doctor, received x-rays, prescribed medication for pain or muscle spasms, or received any medical treatment.

2

### B. Conduct report and RIB hearing

Dunlap prepared a conduct report, which Plaintiff attached to the complaint. The report states that Dunlap ordered Roundtree to give him the cell phone, but Plaintiff did not comply and instead threw a cup of coffee at Dunlap and wrestled past Dunlap to the toilet and placed the phone in the toilet. According to the report, Roundtree ignored Dunlap's directives and pulled a "brown balled up paper towel" from his underwear, which he swallowed. Dunlap reports that he applied hammer fist strikes to Roundtree to obtain compliance with his directives. Responding backup officers secured Roundtree, placed him in handcuffs, and retrieved the cell phone from the toilet. (Doc. 1-2).

Plaintiff was charged with violations of institutional rules 4, 20, and 51. (Doc. 1 at 17, ¶ 2). A Rules Infraction Board ("RIB") hearing was scheduled for November 23, 2016. (*Id.* at 10, ¶ 25). Defendant Lieutenant Briely conducted the RIB hearing.

At the hearing, Dunlap testified that he did not see Roundtree with a coffee cup but believed that Plaintiff threw his coffee cup because, when the incident was over, Dunlap had coffee on his pants leg. Briely asked Dunlap if he thought Plaintiff was trying to hurt him or attempting to flush the cell phone, and Dunlap answered: "flush the cell phone." Plaintiff claims that the assault charges against him should have been thrown out because Dunlap's testimony at the RIB hearing was exculpatory, and Briely overlooked Dunlap's "perjury." (*Id.* at 11, ¶¶ 27-30; *see also id*. at 17-18, ¶¶ 3-7). Roundtree alleges that Dunlap is trained in martial arts, and when Roundtree testified at the RIB hearing concerning the hammer fist strikes, Briely acknowledged Dunlap's training. (*Id.* at 11, ¶ 31).

Plaintiff was found guilty by the RIB of resisting arrest, assault, and contraband, and sentenced to time served for resisting arrest, 30 days for assault, and 30 days for contraband to be served in the "LPH" program. (*Id.* ¶¶ 32-34). The RIB's ruling is not attached to the complaint.

### C. Appeal of RIB ruling and security level classification

Roundtree appealed the RIB assault conviction to Warden Haviland and Director Mohr. His appeal was denied, and Plaintiff complains that neither listened to the tape of the RIB hearing even though he explained in his appeal that Dunlap "changed his story" at the hearing regarding the assault charge in the conduct report. (*Id.* at 12, ¶¶ 35, 36). Roundtree sent multiple letters to defendant Mohr explaining that he had overlooked evidence but was told that the RIB's decision was final.

As a result of the RIB's ruling and assault conviction, a level 4B security classification was recommended, which Plaintiff appealed. Plaintiff states that he "won" this appeal,[3] but a security level 3 was recommended for attempting to destroy evidence. (*Id.* at 13, ¶¶ 44, 50-52; Doc. 1-3). Plaintiff unsuccessfully appealed the level 3 security recommendation on the grounds that he was never charged with or found guilty of attempting to destroy evidence, but his appeal was denied. (*Id.* at 14, ¶¶ 54-57).

Roundtree alleges that, at some point, "Columbus" was asking why he was still at the Allen Correctional Institution if he behaved as described in the conduct report. Plaintiff claims that Briely and Haviland should have explained to "Columbus" that Dunlap "changed his story" regarding the rule 4 assault but did not do so, and hid Dunlap's lies in the conduct report

---

[3] Deputy warden Corey Foster, who is not a defendant in this action, responded to Roundtree's level 4B security appeal: "I **APPROVE** the recommended placement of 4B appeal based on documentation forwarded from RIB Case# ACI-16-004247. However, the committee is recommending level 3 placement for attempting to destroy evidence." (Doc. 1-3 (emphasis in original)).

regarding the assault charge and his level 4B security appeal. (*Id.* at 12, ¶¶ 40-43; *id.* at 14, ¶ 58). Plaintiff was ultimately transferred to the Southern Ohio Correctional Facility.

### D. Setion 1983 claims and relief sought

Roundtree states that he exhausted his administrative remedies concerning the claims in the instant action. Roundtree claims that he improperly received a level 4B security classification because he was incorrectly convicted of assault by the RIB which was not corrected on appeal, and because Haviland hid and destroyed evidence concerning the RIB hearing and Plaintiff's appeal of his 4B security classification. (*See id.* at 17-22).

Plaintiff seeks the following relief: (1) declaratory judgment that Dunlap prepared a false conduct report and admitted at the RBI hearing that the conduct report was not truthful, which resulted in a change to Plaintiff's security level; (2) an order vacating the disciplinary proceedings ACI-16-4347 and expunging Roundtree's record regarding those proceedings; (3) declaratory judgment against "defendants" whose acts and omissions violated the laws of the Ohio and the United States Constitution; (4) an injunction ordering "defendants" not to overlook, spoliate, or withhold evidence; (5) an injunction ordering correctional officers not to use unnecessary force such as "hammer fists" and cause physical harm; (6) an injunction prohibiting the making of false conduct reports and accusations; and (7) compensatory and punitive damages in the amount of $50,000.00 from each defendant, totaling $250.000.00, jointly and severally. (*See id.* at 23-24).

### Standard of Review

*Pro se* pleadings must liberally construed by the Court. *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner,* 404 U.S. 519, 520 (1972). That said, the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to

state a claim upon which relief can be granted, lacks an arguable basis in law or fact, or seeks monetary relief against a defendant who is immune from such relief. *See Neitzke v. Williams,* 490 U.S. 319 (1989); *Lawler v. Marshall,* 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir. 1996).

The dismissal standard for Fed. R. Civ. P. 12(b)(6) articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) governs dismissal for failure to state a claim under § 1915(e)(2)(B) and 1915A. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). A cause of action fails to state a claim upon which relief may be granted when it lacks plausibility in the complaint. *See Twombly*, 550 U.S. at 564.

## Analysis

Roundtree brings this action pursuant to 42 U.S.C. § 1983. To state a claim under § 1983, Roundtree must allege "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." *Wittstock v. Mark A. Van Sile, Inc*., 330 F.3d 899, 902 (6th Cir. 2003) (citations omitted).

To the extent that Roundtree sues defendants in their official capacities for damages, those claims are barred by Eleventh Amendment state sovereign immunity because such claims impose liability on the office these public officials represent. Official capacity claims for injunctive relief are not barred by sovereign immunity. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 89-90 (1989) (citations omitted).

Also barred are Plaintiff's claims against defendants solely in their supervisory capacity with overall responsibility for enforcing policies at the Ohio Department of Rehabilitation and Corrections. *Respondeat superior* does not apply to § 1983 claims and cannot serve as a basis for liability. *Iqbal*, 556 U.S. at 676, *Monell v. Dep't of Soc. Servs*, 436 U.S.658, 690-91 (1978).

6

"[Section] 1983 liability of supervisory personnel must be based on more than the right to control employees." *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984) (citation omitted). Liability under § 1983 is premised upon active unconstitutional behavior, not a mere failure to act. *Greene v. Barber,* 310 F.3d 889, 899 (6th Cir. 2002) (citations omitted). To the extent that Roundtree's § 1983 claims against defendants are asserted in their supervisory capacities, those claims are dismissed for failure to state a plausible claim upon which relief may be granted.

Finally, Roundtree's claims are not cognizable under § 1983 where a successful ruling would necessarily imply the invalidity of his disciplinary conviction and the punishment imposed,[4] and those claims are dismissed. *See Murray v. Unknown Evert*, 84 F. App'x 553, 555 (6th Cir. 2003) (plaintiff's claim that a finding of guilt for the misconduct of threatening behavior is false is not cognizable under § 1983 because, if established, necessarily implies the invalidity of his disciplinary conviction; plaintiff must show his misconduct conviction has been invalidated in order to state a cognizable § 1983 claim) (citing *Edwards v. Balisok,* 520 U.S. 641, 648 (1997); *Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994)). To the to the extent that a ruling in Plaintiff's favor would imply the invalidity of his disciplinary conviction, those claims are not cognizable and are dismissed.

To the extent that Plaintiff's § 1983 claims are cognizable and not subject to dismissal for the foregoing reasons, Roundtree's § 1983 claims fall into two categories: (1) defendants violated his constitutional right to due process[5] in connection with the disciplinary process, appeal, and security level classification resulting from the events on November 8, 2016; and (2)

---

[4] Roundtree asks this Court, among other requests, to vacate the disciplinary proceeding at issue here, and expunge "those reports" from his record. (Doc. 1 at 23, ¶ 2).

[5] Roundtree does not the source of his claimed constitutional right, but liberally construing the complaint, I will analyze his due process claim under the Fourteenth Amendment.

Dunlap's use of hammer fists constituted excessive force in violation of the Eighth Amendment. Plaintiff fails to allege a deprivation of any right secured by the Constitution and, therefore, fails to state a plausible § 1983 claim upon which relief may be granted.

**A. Due process**

Plaintiff claims that defendants violated his constitutional right to due process because he was placed in a higher security classification as a result of a false conduct report and unsupported conviction of assault after a RIB hearing, which was not corrected on appeal. But "[w]ithout a protected liberty interest, [a prisoner] cannot successfully claim that his due process rights were violated because 'process is not an end in itself.'" *Ford v. Harvey*, 106 F. App'x 397, 399 (6th Cir. 2004) (quoting *Olim v. Wakinekona,* 461 U.S. 238, 250 (1983)).

"[A] prisoner does not have a constitutional right to placement in any particular prison [*Olim*, 461 U.S. at 245], or in a particular security classification." *Id.* (citing *Montanye v. Haymes,* 427 U.S. 236, 242 (1976)). "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (citing *Meachum v. Fano,* 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause itself in transfer from a low security prison to a maximum security facility)). "Even in the absence of a disciplinary conviction, a state may transfer a prisoner to a less desirable facility without implicating the Due Process Clause." *Workman v. Wilkinson*, 23 F. App'x 439, 440 (6th Cir. 2001) (citing *Meachum v. Fano,* 427 U.S. 215, 224-25 (1976)).

While transfer to a supermax facility triggers due process considerations, those considerations do not apply here because the Southern Ohio Correctional facility is not a supermax prison – Ohio's only supermax facility is the Ohio State Penitentiary. *See Austin*, 545

U.S. at 209; *see also Thompson v. Oppy*, No. 1:15-CV-621, 2017 WL 6154402, at *1-2 (S.D. Ohio Dec. 8, 2017) (prisoner transferred from Toledo Correctional Institution to Southern Ohio Correctional Facility fails to state a § 1983 claim upon which relief may be granted with respect to his claim that his security classification was increased without due process) (citing *Austin*, 545 U.S. at 221-22)).

Roundtree's 4B security level classification and transfer to the Southern Ohio Correctional Facility does not give rise to a constitutional liberty interest that implicates due process considerations. Accordingly, I find that Roundtree fails to state a § 1983 due process claim upon which relief may be granted with respect to a change in his security classification and transfer from Allen Correctional Institution to the Southern Ohio Correctional Facility.

Nor does a prisoner have a constitutional right to be free from erroneous allegations of misconduct. *See Goudlock v. Blankenship*, No. 1:13-CV-1215, 2015 WL 5730219, at *6 (N.D. Ohio Sept. 28, 2015) (a prisoner has no clearly established constitutional right to a "correct" conduct report or to a certain kind of testimony at a disciplinary hearing) (collecting cases); *Reeves v. Mohr*, No. 4:11CV2062, 2012 WL 275166, at *2 (N.D. Ohio Jan. 31, 2012) (same) (collecting cases); *see also Jones v. McKinney*, 172 F.3d 48 (6th Cir. 1998) (Table) ("McKinney did not violate Jones's constitutional rights, even if the disciplinary report was false, because a prisoner has no constitutionally protected immunity from being wrongly accused.") (citation omitted). A false conduct charge may result in a constitutional violation if, as a result, a prisoner is deprived of a protected liberty interest without due process. *See Reeves,* 2012 WL 275166, at *2 (citing *Sandin v. Conner*, 313 U.S. 472, 485 (1995)). But I have determined that Roundtree's change in security classification and transfer to the Southern Ohio Correctional Facility does not implicate a constitutionally protected liberty interest. Therefore, even accepting the truth of

9

Roundtree's allegation that Dunlap's conduct report was false, he fails to state a § 1983 claim upon which relief may be granted.[6]

Roundtree claims that the RIB hearing produced an erroneous finding of guilt with respect to the assault charge because of the purported inconsistency between the content of Dunlap's conduct report and Dunlap's testimony at the RIB hearing. As discussed above, Roundtree has no due process rights with respect to the conduct report and RIB hearing which resulted in an assault conviction and ultimate reclassification his security level because there is no constitutionally protected liberty interest in a particular security classification. But to the extent due process guarantees apply to the RIB hearing, those guarantees were satisfied here.[7]

Roundtree had notice of the RIB hearing and charges against him and was provided with an opportunity to testify before the RIB, present evidence and his version of the events, and challenge the conduct report. Dunlap testified before the RIB and explained why, when he prepared the conduct report, he believed Plaintiff had thrown coffee at him. "[N]ot much evidence is required to support the action of a prison disciplinary board." *Williams v. Bass*, 63 F.3d 483, 485 (6th Cir. 1995) (citing *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445 (1985)). I am not required to examine the record, assess witness credibility, or independently weigh the evidence. "Instead, the relevant question is whether there is any evidence in the record

---

[6] Plaintiff does not raise a § 1983 due process claim concerning the limited privilege sanctions imposed by the RIB after finding him guilty of the conduct charged. But even if he did, the sanction of a limited time in segregation does not deprive Roundtree of a liberty interest protected by due process. *See Sandin*, 515 U.S. at 486) (30 days in segregation does not constitute an atypical and significant hardship that implicates a constitutionally protected liberty interest).

[7] In *Wolff v. McDonnell* the Supreme Court addressed the due process requirements for a disciplinary hearing where loss of good-time credits were at stake, which is not the case here, and held that the minimum due process requirements for such a disciplinary hearing are: (1) written notice of the charges before the hearing, (2) an opportunity to call witnesses and present evidence, and (3) a written statement of the evidence relied upon and reason for the action taken. *Wolff*, 418 U.S. 539 (1974)). Roundtree alleges that he had notice of the charge before the RIB hearing and the opportunity to present evidence at the hearing. A written statement is not attached to the complaint, but Roundtree does not claim that he did not receive a written statement from the RIB of the evidence relied upon and reason for the action taken.

10

that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. Roundtree admitted to possessing contraband, attempting to flush it down the toilet, raising his hands, and an ensuing disturbance. Even if Roundtree were entitled to due process at the RIB hearing, which he is not, the allegations taken in the complaint, taken as true, are sufficient to satisfy the "some evidence" test required by *Hill*.[8]

Roundtree appealed the RIB ruling and alleges that he explained to both Mohr and Haviland that he believed that Dunlap's conduct report was false and that Dunlap "changed his story" at the RIB hearing. Roundtree claims he did not receive due process with respect to his appeals because those considering his appeal did not listen to the RIB tapes and/or did not receive complete information and documentation concerning the facts of the appeal. But a prisoner has no due process right to appeal a disciplinary conviction. *See Cordoba v. Shartle*, No. 4:09 CV3015, 2010 WL 2572854, at *5 (N.D. Ohio June 23, 2010) (the Fourteenth Amendment does not provide a due process right to an appeal of a prison disciplinary hearing) (collecting cases and citing among authority *Wolff v. McDonnell*, 418 U.S. 539 (1974)); *see also Christian v. Gluch*, 918 F.2d 957 (6th Cir. 1990) (Table) (no constitutional to due process violated where the warden ignored prisoner's requests for proper appeal form until after time for appeal expired). Even assuming the truth of Roundtree's allegations that Mohr and Haviland did not listen to the RIB hearing tapes, he was not deprived of any constitutional right to due process with respect to his appeals of the RIB ruling.

---

[8] Roundtree claims that the evidence before the RIB was insufficient to prove guilt on the assault charge beyond a reasonable doubt. (Doc. 1 at 18, ¶ 7). But prison disciplinary proceedings are not criminal proceedings, and some evidence of guilt is sufficient to satisfy due process – guilt beyond a reasonable doubt is not required. *See Mullins v. Smith*, 14 F. Supp. 2d 1009, 1012 (E.D. Mich. 1998) (citing *Hill*).

## B. Excessive force

Prisoners are protected from the use of excessive force by the Eighth Amendment of the Constitution. *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citation omitted). However, not every use of intentional force upon an inmate by a prison official constitutes an Eighth Amendment violation. Indeed, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law[.]" *Id.*

There is an objective and subjective component to an Eighth Amendment claim. A prisoner must satisfy both to make out an excessive force claim under the Eighth Amendment. *Hopper v. Phil Plummer*, 887 F.3d 744, 752 (6th Cir. 2018) (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)).

"The subjective component focuses on the state of mind of the prison officials." *Curtin*, 631 F.3d at 383. That is, "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 7 (1992) (citation omitted). "[T]he good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment." *Jones Bey v. Johnson,* 248 Fed. App'x 675, 677 (6th Cir. 2007) (citing *Parrish v. Johnson,* 800 F.2d 600, 604 (6th Cir. 1986)). In order to satisfy the subjective component, the force used must be "wanton" and "unnecessary." *Id.*

A "significant injury" is not a threshold requirement for an excessive force claim. *Wilkins v. Gaddy,* 559 U.S. 34, 37 (quoting *Hudson*, 503 U.S. at 7). While an inmate is not required to suffer a serious injury in order to maintain an excessive force claim, the seriousness of the inmate's injuries may be considered in determining whether the force used was wanton and

unnecessary. *Hudson*, 503 U.S. at 7 (citing *Whitley,* 475 U.S. at 321). That said, "[t]he objective component requires the pain inflicted to be 'sufficiently serious'" so as to violate contemporary standards of decency. *Curtin,* 631 F.3d at 383 (quoting *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)).

### Subjective component

Roundtree alleges that Dunlap applied force by the use of mace and hammer fists during the disturbance that ensued around Roundtree's admitted use of, and attempt to destroy, contraband. The question is "whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers,* 475 U.S. 312, 321 (1986) (internal quotation marks and citation omitted). To make this subjective determination, courts consider the reasons or motivation for the conduct, the type and extent of force applied, and the extent of inflicted injury. *Caldwell v. Moore,* 968 F.2d 595, 600 (6th Cir. 1992).

Prison officials are entitled to use physical force to compel obedience by inmates. *See Caldwell v. Moore*, 968 F.3d 595, 602 (6th Cir. 1992). "The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Whitley*, 475 U.S. at 319. "[T]he question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm." *Id.* at 313.

Taking the allegations in the complaint as true, Roundtree has not plausibly alleged, nor can I infer from his allegations, that Dunlap's use of force was wanton and unnecessary, rather than to compel obedience and restore order. Here, Plaintiff alleges that, while unrestrained in his cell, he was using contraband, attempted to conceal and lied to Dunlap regarding the contraband, threw the contraband into the toilet, and attempted to force the phone down the toilet. (Doc. 1 at 8, ¶¶ 1-5). Plaintiff alleges that Dunlap called for backup, sprayed Plaintiff with mace and placed him in a choke hold, whereupon both fell to the cell floor, after which Dunlap applied hammer fists to Plaintiff's side. (*Id.* at 8-9, ¶¶ 6-15). Taking Roundtree's allegations as true, Plaintiff fails to state a plausible claim that Dunlap's use of force was unnecessary and wanton – rather than in a good faith effort to restore and maintain discipline after he discovered contraband in Roundtree's cell. *See Iacovone v. Wilkinson*, No. 203-CV-652, 2007 WL 490160, at *9 (S.D. Ohio Feb. 8, 2007) (even if force used against plaintiff was more than de minimis, it was neither unnecessary or wanton as it occurred immediately after contraband had been discovered in plaintiff's cell and applied in a good faith effort to maintain and restore discipline) (citing *Hudson,* 503 U.S. at 7), *report and recommendation adopted,* No. 2:03CV652, 2007 WL 756649 (S.D. Ohio Mar. 7, 2007).

**Objective component**

Nor can I infer from a liberal reading of the complaint that Roundtree has plausibly alleged that he suffered a sufficiently serious injury to establish the objective component of his Eighth Amendment claim. After initially denying that he suffered an injury, Plaintiff states that he experienced pain and swelling in his rib area the next day which persisted for almost a year. Roundtree does not allege that he was diagnosed with fractured or broken ribs, but that he was diagnosed by three different nurses with "bruised ribs, muscle spasms, sore neck, and bruised

14

muscles." (*Id*. at 20-21, ¶ 14). Roundtree does not attach any medical reports to the complaint or allege that he was examined by a doctor, received x-rays, prescribed medication for pain or muscle spasms, or received any medical treatment. Assuming the truth of Plaintiff's diagnosis concerning his ribs and allegations concerning pain and swelling, the injuries he sustained were de minimis and do not satisfy the objective component of an Eighth Amendment excessive force claim. *See Brock v. Coonts*, No. 5:17CV-P183-TBR, 2018 WL 2024865, at *5 (W.D. Ky. May 1, 2018) (collecting cases that pain, swelling, and bruising are de minimis injuries); *Parkins v. Nguyen*, No. 5:17-CV-05220, 2018 WL 4956516, at *5 (W.D. Ark. Oct. 12, 2018) (abrasion to plaintiff's head after hammer fists administered to plaintiff's head to secure compliance during arrest is a de minimis injury) (citation omitted).

### C. Criminal and state law claims

Roundtree alleges that Dunlap committed aggravated assault and Haviland committed the crime of spoliation of evidence. (*See* Doc. 1 at 18, 19, ¶¶ 11, 14). To the extent that Roundtree attempts to bring federal criminal charges in this § 1983 action, he lacks standing to do so, and I dismiss those claims. *See Williams v. Luttrell*, 99 F. App'x 705, 707 (6th Cir. 2004) (A private citizen "has no authority to initiate a federal criminal prosecution [against] defendants for their alleged unlawful acts.") (citing among authority *Diamond v. Charles,* 476 U.S. 54, 64-65 (1986)).

Roundtree seeks a declaration that the defendants violated the laws of the state of Ohio. (See Doc. 1 at 23, ¶ 3). "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Basista Holdings, LLC v. Ellsworth Twp.*, 710 F. App'x 688, 693 (6th Cir. 2017) (quoting *Carnegie-Mellon v. Cohill*, 484 U.S. 343, 350 (1988)).

15

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7. Here, I have dismissed all of Roundtree's federal § 1983 claims, and the balance of factors weighs in favor of declining supplemental jurisdiction over Roundtree's state-law claims. To the extent that Roundtree alleges state law claims, I decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c).

**Conclusion**

It is, therefore,

ORDERED THAT:

1. Plaintiff's claims brought under 42 U.S.C. § 1983 be, and the same hereby are, dismissed pursuant to 28 U.S.C. § 1915(e) and §1915A;

2. Plaintiff's state-law claims be, and the same hereby are, dismissed without prejudice;

3. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision could not be taken in good faith.

So ordered.

/S/James G. Carr
Sr. U.S. District Judge